PAULA VAN SLYKE (FLEMING),    )
        )
    Plaintiff/Appellant,    )
        )    Appeal No.
        )    01-A-01-9504-CV-00178
VS.    )
        )    Davidson Circuit
        )    No. 89D-2133
PHILIP EDWARD FLEMING,    )
        )
    Defendant/Appellee.    )

**FILED**

**Oct. 15, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

CHARLES PATRICK FLYNN
MICHAEL K. RADFORD
FLYNN & NEENAN, ATTORNEYS, P.C.
200 Fourth Avenue, North
Suite 800, Noel Place
Nashville, Tennessee  37219
    Attorneys for Plaintiff/Appellant

JAMES G. MARTIN, III
G. A. PURYEAR, IV
FARRIS, WARFIELD & KANADAY
Suite 1900, 424 Church Street
Nashville, Tennessee  37219
    Attorneys for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
LEWIS, J.
KOCH, J.

# <u>O P I N I O N</u>

This case involves the question of whether a custodial parent may claim the benefit of changes in the child support guidelines promulgated after trial on her Petition for Increased Child Support, but before the trial court filed its Final Order. Because those changes were not raised in the proceedings below, we decline to act on them here. Instead, we remand the cause to the trial court for further proceedings.

## I.

Philip Fleming and Paula Van Slyke married in 1977, when he was in medical school and she was in law school. After graduation, a residency and a fellowship, the husband began a plastic surgery practice that has proven to be very lucrative. The wife served in two judicial clerkships after graduation from law school, and is now in private practice. Two children were born of the marriage, Sarah Kate Fleming and David Scott Fleming.

The parties divorced in 1990. The divorce decree recited that irreconcilable differences existed between the parties, and it incorporated a marital dissolution agreement that they had negotiated. Among other things, the agreement provided that the wife would have custody of Sarah and David, and that the husband would pay child support directly to her in the amount of $1,000 per month per child.

The husband assumed other obligations relative to the children, including the payment of tuition, fees and books for each child's private education through the twelfth grade, and the provision of a four year college education for both.

He also agreed to maintain major medical and hospitalization insurance for the children, and to pay one half of their medical and dental expenses not covered by insurance.

The wife acknowledges that Dr. Fleming has always paid the monthly child support check in a timely way, and she does not deny that he has covered the the children's expenses at Oak Hill School, where they are currently enrolled. According to Dr. Fleming's statement of monthly expenses, tuition and other school-related expenses paid by him amount to about $700 per month.

## II.

On August 24, 1993, Ms. Van Slyke filed a petition for an increase in child support. She claimed that the needs of the children had increased since the divorce, and that Dr. Fleming's income had also substantially increased. Trial on the petition occurred on May 26, 1994 and June 6, 1994.

The wife testified that as the children have grown, they have begun to participate in more activities, including some that require a substantial financial outlay. They golf, play tennis and swim. They have taken piano lessons, horseback riding lessons, flute lessons and Taekwondo lessons. They play soccer, baseball and basketball, and they go on snow-skiing trips. Ms. Van Slyke has also gone back to work full-time, and as a result she has also had to spend more on after-school and summer child care and babysitting.

The proof also showed that in 1989, the year before the parties' divorce, Dr. Fleming's net income had been $178,213. This was the most recent financial information Ms. Van Slyke had to rely on during the negotiations for the marital dissolution agreement. In 1990, Dr. Fleming experienced a dramatic increase in his

income as a result of performing a greatly increased number of breast flap reconstruction procedures. He earned $387,086 that year. Though it has declined steadily since then, Dr. Fleming's net income has remained well above the 1989 level. In 1993, the most recent year for which the court has figures, it amounted to $269,770.

The trial judge agreed that the children's increased needs combined with the improvement in Dr. Fleming's means warranted an increase in his child support obligation. On August 11, 1994, she entered an order increasing his monthly payment to $1,500 per child. The wife appealed the trial court's order, arguing that the court should have ordered a larger increase.

This court dismissed the appeal without prejudice, because the order of the trial court did not specifically dispose of certain matters raised in the original petition. Ms. Van Slyke then returned to the trial court to deal with those matters (which are not relevant to the proceedings currently before us). On January 26, 1995, she obtained a final order that is appealable to this court.

## III.

The appellant's primary argument is that the trial court erred in ordering Dr. Fleming to pay child support in an amount that was less than would be required if the percentage mandated by the child support guidelines was applied to the entire amount of his net income. To deal with this issue, we must briefly discuss the history and evolution of the guidelines.

In 1989, the Tennessee Legislature enacted a statute which required the courts to apply the child support guidelines promulgated by the Department of Human Services as a rebuttable presumption when making such awards. The purpose of the

statute was to introduce some consistency into child support awards, and to meet the requirements imposed by the Congress for receipt by the state of federal money for child support enforcement.

The statute is now codified at Tenn. Code Ann. § 36-5-101(e). The guidelines referred to established fixed percentages of a non-custodial parent's net income to be applied to child support, depending on the number of children involved (21% for one child, 32% for two children, etc.). The guidelines also included rules recognizing types of "unique cases" where strict application of the mandated percentages would not be appropriate or equitable, including those where "the net income of the obligor exceeds $6,250 per month." See *Nash v. Mulle*, 846 S.W.2d 803, 805, footnotes 9 and 10, (Tenn. 1993).

After Tenn. Code Ann. § 36-5-101(e)(2) became effective, but before the Supreme Court's opinion in *Nash v. Mulle*, there was much uncertainty in the courts about the proper way to determine support obligations in situations where the non-custodial parent had a net income above $6,250 per month. This uncertainty was exemplified in the procedural history that led to the *Nash v. Mulle* opinion. The trial court had ordered the father to pay an amount equal to 21% of his rather large income for child support (only one child was involved). The Court of Appeals reversed, holding that the guidelines could not be applied to income that exceeded the maximum provided for in the tables, and reduced the award to 21% of $6,250, or $1,312.

The Tennessee Supreme Court reversed the Court of Appeals by ruling that the trial court could, in its sound discretion, determine on a case-by-case basis "the appropriate amount of child support to be paid when an obligor's net income exceeds $6,250 per month, balancing both the child's needs and the parents' means." The case was remanded to the trial court to give the judge an opportunity to

reconsider his opinion in light of the fact that he was neither bound to award 21% of Mr. Mulle's total net income, nor limited to a cap defined by the maximum figures found in the tables. *Nash v. Mulle* at 806.

Despite argument to the contrary by Ms. Van Slyke, our reading of the record in the present case convinces us that the trial court did not abuse its discretion in granting her a $1,000 per month increase in child support. The additional funds will enable her to meet the expenses directly attributable to the cost of providing the children with the advantages that both parents wish them to enjoy. We find no merit in the appellant's argument that in calculating the true cost of supporting her children, we must include one half of her household expenses, including the mortgage, appliance and furniture replacement, the cost of repainting her home, and the services of an interior decorator.

## IV.

Ms. Van Slyke's second argument relies upon the amendments to the guidelines which became effective December 14, 1994. The amended guidelines omit the previous rule declaring that among the cases for which the guidelines were neither appropriate nor equitable are those where the income of the obligor parent exceeds $6,250. In its place, the guidelines now contain the following:

> The court must order child support based upon the appropriate percentage of *all net income of the obligor* as defined according to 1240-2-4-.03 of this rule but alternate payment arrangements may be made for the award from that portion of net income which exceeds $6,250. When the net income of the obligor exceeds $6,250 per month, the court may establish educational or other trust funds for the benefit of the child(ren) or make other provisions in the child(ren)'s best interest; however all of the support award amount based on net income up through $6,250 must be paid to the custodial parent. (emphasis added).

> Tenn. Comp. R. & Regs. Ch. 1240-2-4(f)(3).

The appellant argues that this court should apply the new version of the guidelines because it became effective before the filing of the final judgment in this case. However, we note that the issue was not presented to the trial court. Therefore, we decline to consider it here. The determination of how to structure payments based on income exceeding $6,250 per month should be made on a record developed in the trial court with this issue in mind.

## V.

Ms. Van Slyke makes one more point that has some validity, however. She argues that if we affirm the trial court, she will simply file a new petition for modification of child support and that the new guidelines will of necessity apply to the new petition. While we find that argument insufficient to compel us to consider the issue she has raised here, we do think that judicial economy would be served by remanding the cause to the trial court for consideration under the current regulations. The parties should also be free to present fresh evidence of income, expenses, and how the payments based on income above $6,250 per month should be applied.

## VI.

We affirm the judgment of the trial court. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE


CONCUR:



_____
SAMUEL L. LEWIS, JUDGE



_____
WILLIAM C. KOCH, JR., JUDGE